Ross A. Jurewitz (SBN 211226)
JUREWITZ LAW GROUP
501 West Broadway, Suite 1780
San Diego, CA 92101
Telephone: (619) 233-5020
Facsimile: (888) 233-3180

Attorneys for Plaintiffs,
JUSTINE FISHER and JOSE MARQUEZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JUSTINE FISHER, an individual; JOSE MARQUEZ, an individual, | Case No.: CV 08-3121 CW |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| vs. | 1. **Breach of Contract;** |
| | 2. **Breach of Implied Covenant of Good Faith and Fair Dealing;** |
| | 3. **Common Law Fraud; and** |
| | 4. **Declaratory Relief.** |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Massachusetts corporation; CHRISTOPHER N. TUCKER, DC, an individual doing business as LAMORINDA CHIROPRACTIC; and DOES 1 through 100, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## BACKGROUND ALLEGATIONS

1.      At all relevant times herein, Plaintiffs JUSTINE FISHER and JOSE MARQUEZ
(hereinafter "Plaintiffs") were and are residents of the City of Moraga, County of Contra Costa, in the
State of California.

2.      Plaintiffs are informed and believe and thereupon allege that at all relevant times herein
Defendant LIBERTY MUTUAL FIRE INSURANCE COMPANY (hereinafter "LIBERTY MUTUAL")

1   was and is a corporation organized under the laws of the State of Massachusetts, with its principle place

2   of business in Boston, Massachusetts. It is believed and thereby alleged that LIBERTY MUTUAL is

3   obligated to Plaintiffs under a policy of insurance sold by said Defendant in the City of Moraga, County

4   of Contra Costa, in the State of California.

5       3.      Plaintiffs are informed and believe and thereupon allege that at all times relevant herein

6   Defendant CHRISTOPHER N. TUCKER, DC was an individual doing business as LAMORINDA

7   CHIROPRACTIC (hereinafter "TUCKER") in the City of Lafayette, County of Contra Costa, and State

8   of California.

9       4.      JURISDICTION. This action was originally filed in the Superior Court of California,

10  County of Contra Costa. Defendant LIBERTY MUTUAL filed a Petition for removal to the United

11  States District Court for the Northern District of California, San Francisco Division pursuant to 28

12  U.S.C. § 1441. Removal of the action was proper because, pursuant to the diversity jurisdiction of the

13  Court as set forth in 28 U.S.C. § 1332, the action was subject to the original jurisdiction of this Court as

14  the action involves a controversy amongst citizens of different states and the amount in controversy

15  exceeds $75,000.

16      5.      Plaintiffs are unaware of the true names and capacities of defendants sued herein as

17  DOES 1 through 100, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs

18  are informed and believe and thereupon allege that at all relevant times each of the DOE defendants was

19  responsible in some manner for the acts, omissions and/or occurrences herein alleged and plaintiffs'

20  damages were proximately caused thereby. Plaintiffs will seek leave to amend this complaint to allege

21  the true names and capacities of the DOE defendants after they have been ascertained.

22      6.      Plaintiffs are informed and believe and thereupon allege that at all relevant times, each

23  defendant was the agent, employee, representative, partner, parent company, subsidiary or affiliate of

24  each or all of the other defendants and was acting, or did act, within the authority of such agency,

25  employment, representation, partnership or corporate affiliation while doing or omitting to do the acts

26  alleged herein and with the permission, approval, consent and/or ratification of all other defendants. The

27  allegations against each defendant incorporate by reference the allegations against each DOE defendant.

28  ///

## SUMMARY OF COMPLAINT

7.     This action arises from LIBERTY MUTUAL's wrongful and fraudulent denial of a first-party insurance claim submitted to LIBERTY MUTUAL under the terms of a "LibertyGuard Auto Policy", Policy No. A02-268-401621-1057, issued by LIBERTY MUTUAL FIRE INSURANCE COMPANY (hereinafter "LibertyGuard Auto Policy" or "the Policy") and sold to and paid for by Plaintiff JUSTINE FISHER (hereinafter "FISHER"), and to which Plaintiff JOSE MARQUEZ (hereinafter "MARQUEZ") was considered an "additional insured" under the terms of the policy.

8.     Apparently recognizing there is a lucrative market of automobile owners who would like to insure themselves, their passengers, and others injured in automobile accidents from incurring certain medical care costs, on or about June 19, 2006, LIBERTY MUTUAL marketed and sold to FISHER a written "LibertyGuard Auto Policy," which expressly provides for "medical payment" coverage, regardless of fault for the cause of the accident, to the named insured, their passengers, and any other additional insureds under the terms of the policy. Under the terms of the Policy, LIBERTY MUTUAL would pay for "reasonable and necessary" medical treatment resulting from a covered incident, i.e., an automobile accident. FISHER increased the amount of coverage under the Policy to $25,000 per person and paid and maintained all payments due under the Policy.

9.     On or about June 30, 2006, Plaintiffs were involved in a motor vehicle accident while operating a motor vehicle insured under the Policy. As a result of the accident, Plaintiffs were injured in their person, required medical treatment, sought medical treatment, and attempted to utilize the "medical payment" provision of the Policy to pay for said medical treatment.

10.     Beginning on or about July 5, 2006 and continuing until approximately February 5, 2007, Plaintiffs sought and received medical and chiropractic treatment from Defendant TUCKER for their injuries resulting from the aforementioned motor vehicle accident. Plaintiffs did not seek, nor did they receive, any medical or chiropractic treatment from TUCKER other than for said accident related injuries. Plaintiffs further provided TUCKER with the Policy's information and requested that all bills for treatment be submitted for payment under the "medical payment" coverage of the Policy.

11.     Despite the fact that Plaintiffs presented claims of medical payments due to Defendant TUCKER for his services provided to Plaintiffs for reasonable and necessary medical treatment

resulting from the underlying automobile accident, on or about March 9, 2007, LIBERTY MUTUAL denied Plaintiffs' claims under the Policy for all theretofore unpaid medical bills submitted by Defendant TUCKER, in part, claiming that there was no coverage for medical treatment after six weeks from the date of the accident and any subsequent medical treatment was determined not to be "reasonable and necessary." At the time LIBERTY MUTUAL made said representation, LIBERTY MUTUAL knew said representation was false and that the Policy was designed to provide "medical payment" coverage for said claims.

12.    Plaintiffs are informed and believe, and on that basis allege, LIBERTY MUTUAL has instituted a company-wide policy of denying any and all claims under its "LibertyGuard Auto Policies" by falsely asserting that coverage does not exist for "medical payment" claims for medical or chiropractic treatment received more than six weeks after a subject accident. Plaintiffs are further informed and believe, and on that basis allege, that LIBERTY MUTUAL's company-wide policy of denying any and all claims under its "LibertyGuard Automobile Policies," by asserting that coverage under said "LibertyGuard Auto Policies" does not exist for "medical payment" claims for medical or chiropractic treatment received more than six weeks after a subject accident by arguing that said treatment is patently not "reasonable and necessary", has been approved and ratified by LIBERTY MUTUAL's upper-level management and, despite having repeatedly been forced to acknowledge that LIBERTY MUTUAL's company-wide policy is wrongful and fraudulent, LIBERTY MUTUAL continues to knowingly and fraudulently contend that coverage under said "LibertyGuard Auto Policies" does not exist for "medical payment" claims for medical or chiropractic treatment received more than six weeks after a subject accident.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

### (Against Defendants LIBERTY MUTUAL and Does 1-20, Only)

13.    Plaintiffs hereby incorporate by reference paragraphs 1-12 as though fully set forth herein.

14.    At all relevant times herein mentioned, Plaintiffs, as the named insured and additional insured, had in full force and effect a written "LibertyGuard Auto Policy," number A02-268-401621-

1  106 (a copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference) issued

2  by Defendants which provided automobile insurance coverage, including "medical payment" coverage,

3  for the above reference loss.

4      15.    Plaintiffs have paid all premiums due under said the Policy to Defendants, and each of

5  them, and have performed all obligations under the terms of the Policy on Plaintiffs' part to be

6  performed.

7      16.    Between July 5, 2006 and February 5, 2007, Plaintiffs received medical and chiropractic

8  treatment from Defendant TUCKER for injuries arising from the subject accident and provided their

9  LibertyGuard Auto Policy information to Defendant TUCKER for billing against the "medical payment"

10  provisions of the Policy.

11      17.    On or about March 9, 2007, Defendant LIBERTY MUTUAL denied, in part, Plaintiffs'

12  claim for payment of Defendant TUCKER's medical bills submitted relating to the subject accident.  At

13  the time LIBERTY MUTUAL made said representation, LIBERTY MUTUAL knew said representation

14  was false and that the Policy was designed to provide "medical payment" coverage for the subject loss.

15      18.    As a result of LIBERTY MUTUAL's false representation to Plaintiffs that no insurance

16  coverage was available to Plaintiffs under the Policy for part of the medical bills incurred by Plaintiffs,

17  Defendants, and each of them, have breached their contractual obligations under the Policy issued to

18  Plaintiffs by unreasonably failing to provide coverage and/or compensation for said loss which is

19  compensable under the terms of the Policy.

20      19.    As a direct and/or proximate result of Defendants' breach, Plaintiffs have suffered and

21  will continue to suffer substantial economic losses in the form of denied benefits under the Policy in an

22  amount to be determined at the time of trial, but in any event, said sum will be in excess of $75,000.

23      20.    As a further direct and/or proximate result of Defendants' breach, as alleged herein,

24  Plaintiffs have sustained other and additional financial losses and incidental out-of-pocket expenses in

25  an amount to be proven at the time of trial, but in any event exceed $75,000, and which are additional

26  amounts due under the Policy.

27  ///

28  ///

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

### (Against Defendants LIBERTY MUTUAL and Does 1-20, Only)

21.    Plaintiffs hereby incorporate by reference paragraphs 1-20 as though fully set forth herein.

22.    Implied in the Policy which Plaintiffs purchased from Defendants was an implied covenant by Defendants that they would act in good faith and deal fairly with Plaintiffs and would do nothing to interfere with Plaintiffs' right to receive the benefits of the Policy.

23.    Defendants, and each of them, breached their duty of good faith and fair dealing when defendants unreasonably and without proper cause refused to pay Plaintiffs' legitimate insurance claim under the Policy, as alleged above.

24.    The denial of Plaintiffs' claim by Defendants was done without reasonable cause and in bad faith. Defendants were aware of their duty to pay Plaintiffs' claim under the Policy, yet unreasonably refused to provide such coverage and unreasonably and/or fraudulently refused to honor Plaintiffs' claim. As a direct and proximate result of the unreasonable and/or fraudulent conduct of Defendants, and each of them, Plaintiffs have suffered among other things, mental and emotional distress, including anger, frustration, anxiety, worry and humiliation, and other extra-contractual special and compensatory damages as well as other incidental out-of-pocket expenses, in an amount to be proven at the time of trial, but in any event in excess of $75,000.

25.    As a further direct proximate result of Defendants' unreasonable and/or fraudulent denial of Plaintiffs' claim, Plaintiffs have been forced to retain legal counsel to obtain the benefits due them under the terms of the Policy and, therefore, Plaintiffs have sustained, and will continue to sustain, further economic damages in the form of attorney's fees and costs in an amount to be shown at the time of trial. Said claim for attorney's fees is allowed under well-established California case law where it is shown that the insurer unreasonably denied policy benefits. Attorney's fees reasonably incurred by an insured to enforce payment of benefits due under an insurance policy are recoverable damages pursuant to cases such as Brandt v. Sup.Ct. (Standard Ins. Co.), (1985) 37 Cal.3d 813, 817, and Campbell v. Cal-Gard Sur. Services, (1998) 62 Cal.App.4th 563, 571-572.

26.    In doing the acts complained of within this cause of action and as a result of such acts as stated and defined hereinabove, Defendants acted with malice, fraud, or oppression, thereby justifying and/or requiring an award of prejudgment interest in such amount to be proven at trial in accordance with California Civil Code §3288.

27.    In doing the acts complained of within this cause of action and as a result of such acts as stated and defined hereinabove, defendants acted with malice, fraud, or oppression, justifying and/or requiring an award of punitive damages in such amount to be proven at trial in accordance with California Civil Code §3294.

## THIRD CAUSE OF ACTION

### (Common Law Fraud)

### (Against Defendants LIBERTY MUTUAL and Does 1-20, Only)

28.    Plaintiffs hereby incorporate by reference paragraphs 1-27 as though fully set forth herein.

29.    Prior to June 2006, Defendants and each of them, by and through their authorized agents and employees, made written and oral promises to Plaintiffs which were contained in the Policy, that in the event Plaintiffs suffered an injury from a covered accident, Defendants would provide medical payment insurance benefits in accordance with the terms of the Policy.

30.    Defendants, and each of them, made said promises for the purpose of inducing Plaintiffs to enter into the Policy of insurance and to pay premiums thereon. Plaintiffs relied upon said promises, entered into said insurance contract, paid premiums thereon and, believing Defendants would provide the insurance coverage that was promised, Plaintiffs refrained from procuring insurance coverage from a less dishonest insurer.

31.    Defendants, despite their representations to the contrary, never at any time intended to comply with those representations and, in fact, consistently refused to do so, and thereby made said promises with the intent to defraud Plaintiffs. Plaintiffs, unaware of Defendants' fraudulent intent not to perform said promises, relied upon said promises and entered into said contract of insurance memorialized by the Policy and paid premiums thereon. At all times, Defendants held themselves out as legitimate providers of insurance and/or insurance services. Under the circumstances, Plaintiffs'

1  reliance upon said false promises was reasonable.

2      32.    Despite the fact that Plaintiffs' loss presented a classic case of a situation under which the

3  Policy was designed to provide primary coverage for medical payments, LIBERTY MUTUAL denied

4  Plaintiffs' claim, in part, for said loss by falsely and fraudulently advising Plaintiffs that the Policy

5  provided no coverage for the loss for more than six weeks of medical treatment. At the time, Plaintiffs'

6  medical treatment had already exceeded six weeks of treatment and when LIBERTY MUTUAL made

7  said representation, LIBERTY MUTUAL knew said representation was false and that the Policy was

8  designed to provide primary coverage for medical payments.

9      33.    Plaintiffs are informed and believe, and on that basis allege, LIBERTY MUTUAL has

10  instituted a company-wide policy of denying any and all claims under its "LibertyGuard Auto Policies"

11  by falsely asserting that coverage does not exist for "medical payment" claims for medical or

12  chiropractic treatment received more than six weeks after a subject accident.  Plaintiffs are further

13  informed and believe, and on that basis allege, that LIBERTY MUTUAL's company-wide policy of

14  denying any and all claims under its "LibertyGuard Auto Policy," by asserting that coverage under said

15  "LibertyGuard Auto Policy" does not exist for "medical payment" claims for medical or chiropractic

16  treatment received more than six weeks after a subject accident by arguing that said treatment is patently

17  not "reasonable and necessary", has been approved and ratified by LIBERTY MUTUAL's upper-level

18  management and, despite having repeatedly been forced to acknowledge that LIBERTY MUTUAL's

19  company-wide policy is wrongful and fraudulent, LIBERTY MUTUAL continues to knowingly and

20  fraudulently contend that coverage under said "LibertyGuard Auto Policy" does not exist for "medical

21  payment" claims for medical or chiropractic treatment received more than six weeks after a subject

22  accident.

23      34.    Plaintiffs further allege that LIBERTY MUTUAL company management is aware of and

24  has knowledge that its company-wide policy (of denying any and all claims under its "LibertyGuard

25  Auto Policies" by falsely asserting that coverage does not exist for "medical payment" claims for

26  medical or chiropractic treatment received more than six weeks after a subject accident) is wrongful and

27  fraudulent, but nonetheless continues to implement said policy in conscious disregard for the fraudulent

28  nature of said policy as a means of defrauding thousands of LIBERTY MUTUAL automobile owners

out of millions of dollars in policy benefits. LIBERTY MUTUAL's conduct and company-wide policy (of denying any and all claims under its "LibertyGuard Auto Policies" by falsely asserting that coverage does not exist for "medical payment" claims for medical or chiropractic treatment received more than six weeks after a subject accident) is instituted by LIBERTY MUTUAL on a regular basis and as a common business practice. Plaintiffs, by and through their counsel, are aware of numerous other such cases involving identical denials under LIBERTY MUTUAL's "LibertyGuard Auto Policy" and nearly identical factual situations for which LIBERTY MUTUAL has employed the same or similar fraudulent claims practices.

35.   As a proximate result of Plaintiffs' reasonable reliance upon Defendants' promises and Defendants' intention not to perform at the time said promises were made, Plaintiffs have suffered damages under the terms of the policy, as well as other incidental out-of-pocket expenses, in an amount to be proven at the time of trial, but in any event in excess of $75,000.

36.   As a further proximate result of Plaintiffs' reasonable reliance upon Defendants' promises and Defendants' intention not to perform at the time said promises were made, Plaintiffs, in addition to suffering monetary damages under the terms of the policy, have also suffered, among other things, mental and emotional distress, including anger, frustration, anxiety, worry and humiliation in an amount to be proven at the time of trial, but in any event in excess of $75,000.

37.   As a further direct proximate result of Defendants' unreasonable and/or fraudulent denial of Plaintiffs' claim, Plaintiffs have been forced to retain legal counsel to obtain the benefits due under the terms of the subject Policy and, therefore, Plaintiffs have sustained, and will continue to sustain, further economic damages in the form of attorney's fees and costs in an amount to be shown at the time of trial. Said claim for attorney's fees is allowed under well-established California case law where it is shown that the insurer unreasonably denied policy benefits. Attorney's fees reasonably incurred by an insured to enforce payment of benefits due under an insurance policy are recoverable damages pursuant to cases such as Brandt v. Sup.Ct. (Standard Ins. Co.), (1985) 37 Cal.3d 813, 817, and  Campbell v. Cal-Gard Sur. Services, (1998) 62 Cal.App.4th 563, 571-572.

38.   In doing the acts complained of within this cause of action and as a result of such acts as stated and defined hereinabove, Defendants acted with malice, fraud, or oppression, justifying and/or

1  requiring an award of prejudgment interest in such amount to be proven at trial in accordance with
2  California Civil Code §3288.

3       39.    In doing the acts complained of within this cause of action and as the result of such acts
4  as stated and defined herein above, defendants acted with malice, fraud, or oppression, justifying and/or
5  requiring an award of punitive damages in such amount to be proven at trial in accordance with
6  California Civil §3294.

7                           **FOURTH CAUSE OF ACTION**

8                             **(Declaratory Relief)**

9                            **(Against All Defendants)**

10      40.    Plaintiffs hereby incorporate by reference paragraphs 1-39 as though fully set forth
11  herein.

12      41.    An actual controversy has arisen and now exists between Plaintiffs and Defendant
13  LIBERTY MUTUAL, in one respect, and Plaintiffs and Defendant TUCKER, in another.  LIBERTY
14  MUTUAL has taken the position that it owes Plaintiff no payments according to the Policy's "medical
15  payment" coverage for medical and chiropractic treatment provided to Plaintiff's by Defendant
16  TUCKER because said unpaid treatment is not "reasonable and necessary" to treat injuries arising from
17  the underlying covered automobile accident.  Plaintiffs assert that Defendant LIBERTY MUTUAL has a
18  contractual obligation to pay for any and all unpaid medical services provided by Defendant TUCKER
19  and submitted to Defendant LIBERTY MUTUAL for payment pursuant to the terms of the Policy.
20  Conversely, Defendant TUCKER has taken the position that Plaintiffs owe him payments for medical
21  and chiropractic treatment provided to Plaintiffs but not paid by Defendants LIBERTY MUTUAL.
22  Plaintiffs assert that, to the extent that Defendant TUCKER charged Plaintiffs for medical and
23  chiropractic treatment which was neither reasonable or necessary to treat Plaintiffs' injuries arising from
24  the underlying covered automobile accident, they are not responsible to pay Defendant TUCKER for
25  said charges.

26      41.    Such an adjudication is necessary and appropriate at this time in order that the parties
27  may ascertain their rights and duties with regard to Defendants' activities and conduct and Plaintiffs'
28  responsibility to pay charges, if any, for medical treatment received.

WHEREFORE, Plaintiffs pray for relief as follows:

AGAINST DEFENDANT LIBERTY MUTUAL AND DOES 1-20, INCLUSIVE:

1.    For general damages in a sum according to proof at trial;

2.    For special damages in a sum according to proof at trial;

3.    For reasonable attorneys fees incurred in obtaining benefits due under the policy.

4.    For prejudgment interest in an amount according to proof, pursuant to California Civil Code §3288.

5.    For punitive damages in an amount according to proof pursuant to California Civil Code §3294.

6.    For a declaration of the rights, duties, and obligations of the parties under the LibertyGuard Auto Policy and contract for medical and chiropractic services.

7.    For costs of suit; and

8.    For such other and further relief as the court may deem proper.

AGAINST DEFENDANT TURNER AND DOES 1-100, INCLUSIVE:

1.    For a declaration of the rights, duties, and obligations of the parties under the LibertyGuard Auto Policy and contract for medical and chiropractic services.

2.    For costs of suit; and

3.    For such other and further relief as the court may deem proper.

Dated: August 1, 2008                          JUREWITZ LAW GROUP

By:    _____
       ROSS A. JUREWITZ
       Attorneys for Plaintiffs,
       JUSTINE FISHER and JOSE MARQUEZ

///

///

///

///

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiffs hereby demand trial by jury as to any and all triable issues.

Dated:  August 1, 2008

JUREWITZ LAW GROUP

By: _____

ROSS A. JUREWITZ
Attorneys for Plaintiffs,
JUSTINE FISHER and JOSE MARQUEZ

# Exhibit A

**Liberty Mutual.**

LIBERTY MUTUAL GROUP
PECCORINI O E
201 NORTH CIVIC DR STE 130
WALNUT CREEK CA 94596

JULY 22, 2005

JUSTINE FISHER
2101 DONALD DR 1
MORAGA CA 94556-1473

RE: AO2-268-401621-105
Policy Effective: 07/23/2005

Dear Valued Customer,

Thank you for the confidence you placed in Liberty Mutual by choosing to insure with us. We certainly value your business, as well as your affiliation with California Alumni Association. At Liberty Mutual, we are committed to doing our best to exceed your expectations.

Your auto policy is enclosed. It describes the coverage you selected, along with discounts and credits that have been applied.

Liberty Mutual also provides the following convenient services and benefits as part of your auto policy:

- **24-Hour Claims Reporting** - You can call us with your claims information anytime, 24 hours a day, 7 days a week at 800-2-CLAIMS (800-225-2467). Hearing impaired customers who use a TDD/TTY device can contact us at 800-243-9801. You can also report your claim online at www.libertymutualinsurance.com.
- **Fast Appraisals** - We can usually appraise your car within 24 hours so you can get back on the road as quickly as possible. For your convenience, you can have your car appraised *and* repaired at one of our Total Liberty Care (TLC) repair facilities.
- **Emergency Roadside Assistance** - You have 24-hour, 365-day-a-year access to thousands of authorized tow and service facilities and professional locksmiths by calling 800-426-9898. If you add Towing & Labor coverage, you can use our Sign & Drive feature, so you can sign for any charges (up to your coverage limit) and drive away.§
- **Convenient Billing Options** - We offer several convenient billing options including automatic payment withdrawal and online bill payment to best fit your needs.
- **Safety Materials** - We are pleased to provide our customers with safety information, including:
  - *Liberty Lines*, our magazine that provides safety tips for you and your family
  - Brochures and safety tips, available online and by calling your insurance representative

Other benefits that you may be qualified for include:

- **Accident Forgiveness** - As a special thank you to customers who have been insured with us for five or more years and have a clean driving record, we will waive the surcharge on your first future accident. This benefit reflects the value we place on our long-term customers.*
- **New Vehicle Replacement Cost Coverage** - In the event of a total loss of your new car, Liberty Mutual will replace your vehicle without depreciation.*

At Liberty Mutual, we take pride in offering superior insurance products and services. Whether your needs are auto, home, or other personal insurance, Liberty Mutual is there to provide you with the sense of safety and security you can depend on. If you have any questions, please call 925-935-8460 Monday through Friday, 7 AM to 11 PM, and on Saturdays from 7 AM to 7 PM Eastern Time and we will be happy to assist you. You can also visit us online at www.libertymutualinsurance.com.

Once again, thank you for insuring with Liberty Mutual. We appreciate your business.



*\*G000023Y5AO2268401621000345\**

**Helping People Live Safer, More Secure Lives**

Sincerely,

Brenda C. McDonald
Regional Service Manager
Liberty Mutual Fire Insurance Co.

§ Service applies to auto policyholders and is provided by Cross Country Motor Club of Boston, Inc., Boston, MA or through Cross Country Motor Club of California, Inc., Boston, MA.

* Please consult a Liberty Mutual specialist or see policy for specific coverages and limitations.  New car replacement does not apply to leased vehicles.

## Notice of Membership in Liberty Mutual Holding Company Inc.

While this policy is in effect, the named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc. and is entitled to vote either in person or by proxy at any and all meetings of the members of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

The named insured first named in the Declarations shall participate in the distribution of any dividends declared by us for this Policy. The amount of such Named Insured's participation is determined by the decision of our Board of Directors in compliance with any laws that apply.

Any provisions in the policy relating to:

1. Membership in Liberty Mutual Insurance Company or Liberty Mutual Fire Insurance Company; or

2. Entitlement to dividends as a member of Liberty Mutual Insurance Company or Liberty Mutual Fire Insurance Company

are deleted and replaced by the preceding paragraphs.

2340e                                                                                                    PF

## Liberty Mutual Fire Insurance Company
## Notice of Membership in Liberty Mutual Holding Company Inc. and
## Notice of Annual Meeting

Your policy includes a statement regarding membership rights in Liberty Mutual Holding Company Inc. Liberty Mutual Fire Insurance Company is a Massachusetts stock insurance company subsidiary of Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. Insurance is provided by Liberty Mutual Fire Insurance Company. The named insured first named in the declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com, by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02117, Attention: Corporate Secretary.

2344                                                                                                    PF

**Liberty Guard Auto Policy Declarations**
**Liberty Mutual Fire Insurance Company**
Boston, Massachusetts

**YOUR POLICY NUMBER:** AO2-268-401621-10 5 7

**NAMED INSURED AND MAILING ADDRESS:**
JUSTINE FISHER
2101 DONALD DR 1
MORAGA CA 94556-1473

**THESE DECLARATIONS EFFECTIVE:** 07/23/05
**FOR SERVICE PLEASE CONTACT:**

PECCORINI O E
201 NORTH CIVIC DR STE 130
WALNUT CREEK CA 94596

**SERVICE:** 925-935-8460
**CLAIMS:** 800-2CLAIMS (800-225-2467)
**www.libertymutualinsurance.com**

Group Savings Plus®
California Alumni Association

Policy Period: 07/23/05 to 07/23/06 12:01AM Standard Time at the Address of the
Named Insured as Stated in the Policy.

Reason For This Notice: Your New Policy Declarations

| PERSONAL AUTOMOBILE COVERAGE, LIMITS, AND PREMIUM | | | |
|---|---|---|---|
| **Coverages And Limits Under Your Auto Policy:** | | | **Coverage Is Provided Where A Premium Is Shown For The Coverage** |
| Part | | | Veh 1 |
| A. Liability | | | $ 283 |
| Bodily Injury | $ 100,000 | Each Person | |
| | $ 300,000 | Each Accident | |
| Property Damage | $ 50,000 | Each Accident | |
| B. Medical Payments | $ 25,000 | Each Person | $ 98 |
| C. Uninsured Motorists | | | $ 51 |
| Bodily Injury | $ 100,000 | Each Person | |
| | $ 300,000 | Each Accident | |
| D. Coverage For Damage To Your Auto | | | |
| Collision | | | $ 286 |
| Actual Cash Value Less Deductible Shown: | | | |
| Veh 1 $ 500/Waiver | | | |
| Other Than Collision | | | $ 139 |
| Actual Cash Value Less Deductible Shown: | | | |
| Veh 1 $ 100 | | | |
| Optional Coverage | | | |
| Towing And Labor Cost - $50 Each Disablement | | | $ 4 |
| Annual Premium Per Vehicle: | | | $ 861 |
| Total Annual Policy Premium: | | | $ 861.00 |

| VEHICLES COVERED BY YOUR POLICY | | | |
|---|---|---|---|
| Veh Year Make | | Model | Vehicle ID Number |
| 1 2001 HONDA | | CR V EX | JHLRD186X1C021855 |

AUTO 3079 (Ed. 4-93)

This policy, including all endorsements attached is countersigned by:

*Dexter R. Legg* SECRETARY

*Edmund F. Kelly* PRESIDENT



AUTHORIZED REPRESENTATIVE

# LibertyGuard Auto Policy Declarations
## Liberty Mutual Fire Insurance Company
### Boston, Massachusetts

YOUR POLICY NUMBER: AO2-268-401621-105 7          THESE DECLARATIONS EFFECTIVE: 07/23/05

(Continued from Previous Page)

| Vehicle | Class | Annual Mileage |
|---------|-------|----------------|
| 1 | 048 | 07 |

Loss Payee:
VEH 1 MECHANICS BANK

Month/Year Expires:
07/2006

## DRIVER INFORMATION

| Driver Name | DOB | State | License Number |
|-------------|-----|-------|----------------|
| JUSTINE FISHER | 09/26/60 | CA | N7112658 |

**To Ensure Proper Coverage, Please Contact Us To Add Drivers Not Listed Above.**

Driving Record Points:
Vehicle 1   Violation Points   0   Accident Points   0

## VEHICLE DISCOUNTS INCLUDED IN YOUR RATE

| Discounts | Veh 1 |
|-----------|-------|
| Anti-Lock Braking System | Yes |
| Passive Restraint - Requires Med Pay (Motorized Seat Belts and/or Air Bags) | Yes |

## OTHER DISCOUNTS INCLUDED IN YOUR RATE

| Account Discount | Educated/Professional Group Discount |
|------------------|--------------------------------------|
| Good Driver | Group Savings Plus® |

## ENDORSEMENTS ATTACHED TO YOUR POLICY

| | |
|--|--|
| 2344 | LMHC Membership |
| PP 04 92 04 86 | Split Uninsured Motorists Limits - California |
| AS2127 03 00 | Uninsured Motorist-CA |
| AS1133 07 94 | Amendment of Policy Provisions - California |
| AUTO 3941 | Amendment of Policy Definitions |
| PP 03 05 08 86 | Loss Payable Clause |
| PP 03 03 04 86 | Towing and Labor Cost Coverage |
| PP 03 09 04 86 | Split Liability Limits |
| AS1046 12 89 | Automatic Termination Endorsement |
| AS1006 12 89 | Mexican Extension Endorsement |
| AS2112 10 99 | New Vehicle Replacement Cost Coverage |
| AS2185 06 03 | Nuclear, Bio-Chemical & Mold Exclusion Endorsement |
| PP 13 01 12 99 | Coverage For Damage to Your Auto Exclusion  Endorsement |

AUTO 3079 (Ed. 4-93)

This policy, including all endorsements attached is countersigned by:

Dexter R. Legg
SECRETARY

Edmund F Kelly
PRESIDENT



AUTHORIZED REPRESENTATIVE

**LibertyGuard Auto Policy Declarations**
Liberty Mutual Fire Insurance Company
Boston, Massachusetts

YOUR POLICY NUMBER: AO2-268-401621-105 7      THESE DECLARATIONS EFFECTIVE: 07/23/05

(Continued from Previous Page

---

### SPECIAL STATE PROVISIONS

If a problem arises concerning your insurance, Liberty Mutual will make every effort to resolve the matter. Call your local sales office for assistance.

Whenever the company or its agent has been unable to resolve a consumer complaint affecting this policy, the below listed state agency may be contacted to assist the complainant in pursuing a resolution of the complaint:

California Department Of Insurance
Claims Service Bureau
300 South Spring Street
South Tower, Suite 201
Los Angeles, Ca. 90013
Toll Free Telephone (800) 927-Help (4357)

---

AUTO 3079 (Ed. 4-93)

This policy, including all endorsements attached is countersigned by:

Dexter R. Legg
SECRETARY

Edmund F. Kelly
PRESIDENT

AUTHORIZED REPRESENTATIVE



# LibertyGuard

## Auto Policy

**Please read your policy and each endorsement carefully.**

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States and Canada.  Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance.  Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**

Liberty Mutual Insurance Group

Auto 3075 R1 Ed. 12-89                                                                                              PF

## LIBERTYGUARD AUTO POLICY
## QUICK REFERENCE
## DECLARATIONS PAGE

Your Name and Address
Your Auto or Trailer
Policy Period
Coverages and Amounts of Insurance

Beginning
On Page

Agreement .................................................................................................1
Definitions ...............................................................................................1

**PART A - LIABILITY COVERAGE**
    Insuring Agreement ......................................................................2
    Supplementary Payments .............................................................2
    Exclusions ......................................................................................2
    Limit of Liability .........................................................................3
    Out of State Coverage ..................................................................3
    Financial Responsibility ..............................................................3
    Other Insurance ...........................................................................3

**PART B - MEDICAL PAYMENTS**
    **COVERAGE**
    Insuring Agreement ......................................................................3
    Exclusions ......................................................................................4
    Limit of Liability .........................................................................4
    Other Insurance ...........................................................................4

**PART C - UNINSURED MOTORISTS**
    **COVERAGE**
    Insuring Agreement ......................................................................4
    Exclusions ......................................................................................5
    Limit of Liability .........................................................................5
    Other Insurance ...........................................................................5
    Arbitration ....................................................................................5

**PART D - COVERAGE FOR DAMAGE**
    **TO YOUR AUTO**
    Insuring Agreement ......................................................................6
    Transportation Expenses .............................................................6
    Exclusions ......................................................................................6
    Limit of Liability .........................................................................7
    Payment of Loss ...........................................................................8
    No Benefit to Bailee ....................................................................8
    Other Sources of Recovery .........................................................8
    Appraisal .......................................................................................8

**PART E - DUTIES AFTER AN**
    **ACCIDENT OR LOSS**
    General Duties ..............................................................................8
    Additional Duties for Uninsured Motorists
    Coverage .......................................................................................8
    Additional Duties for Coverage for Damage to
    Your Auto .....................................................................................8

**PART F - GENERAL PROVISIONS**
    Bankruptcy ...................................................................................8
    Changes .........................................................................................8
    Fraud .............................................................................................9
    Legal Action Against Us .............................................................9
    Our Right To Recover Payment ..................................................9
    Policy Period And Territory ........................................................9
    Termination ...................................................................................9
    Transfer Of Your Interest In This Policy ..................................10
    Two Or More Auto Policies .......................................................10

**\*MUTUAL POLICY CONDITIONS**................................................10

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

# AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

A.  Throughout this policy, "you" and "your" refer to:

1.  The "named insured" shown in the Declarations; and

2.  The spouse if a resident of the same household.

B.  "We," "us" and "our" refer to the Company providing this insurance.

C.  For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1.  Under a written agreement to that person; and

2.  For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks or boldfaced when used.

D.  "Bodily injury" means bodily harm, sickness or disease, including death that results.

E.  "Business" includes trade, profession or occupation.

F.  "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G.  "Occupying" means in, upon, getting in, on, out or off.

H.  "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I.  "Trailer" means a vehicle designed to be pulled by a:

1.  Private passenger auto; or

2.  Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J.  "Your covered auto" means:

1.  Any vehicle shown in the Declarations.

2.  Any of the following types of vehicles on the date you become the owner:

a.  a private passenger auto; or

b.  a pickup or van that:

(1)  has a Gross Vehicle Weight of less than 10,000 lbs.; and

(2)  is not used for the delivery or transportation of goods and materials unless such use is:

(a)  incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

(b)  for farming or ranching.

This provision (J.2.) applies only if:

a.  you acquire the vehicle during the policy period;

b.  you ask us to insure it within 30 days after you become the owner; and

c.  with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

3.  Any "trailer" you own.

4.  Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a.  breakdown;          d.  loss; or

b.  repair;             e.  destruction.

c.  servicing;

This provision (J.4.) does not apply to Coverage for Damage to Your Auto.

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

   1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

   2. Any person using "your covered auto."

   3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

   4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured:"

   1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

   2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

   3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

   4. Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

   5. Other reasonable expenses incurred at our request.

### EXCLUSIONS

A. We do not provide Liability Coverage for any person:

   1. Who intentionally causes "bodily injury" or "property damage."

   2. For "property damage" to property owned or being transported by that person.

   3. For "property damage" to property:

      a. rented to;

      b. used by; or

      c. in the care of;

      that person.

      This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

   4. For "bodily injury" to an employee of that person during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

   5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (A.5.) does not apply to a share-the-expense car pool.

   6. While employed or otherwise engaged in the "business" of:

      | | |
      |---|---|
      | a. selling; | d. storing; or |
      | b. repairing; | e. parking; |
      | c. servicing; | |

      vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

      a. you;

      b. any "family member;" or

      c. any partner, agent or employee of you or any "family member."

   7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of a:

      a. private passenger auto;

      b. pickup or van that you own; or

      c. "trailer" used with a vehicle described in a. or b. above.

   8. Using a vehicle without a reasonable belief that that person is entitled to do so.

   9. For "bodily injury" or "property damage" for which that person:

a. is an insured under a nuclear energy liability policy; or

b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

a. American Nuclear Insurers;

b. Mutual Atomic Energy Liability Underwriters; or

c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any motorized vehicle having fewer than four wheels.

2. Any vehicle, other than "your covered auto," which is:

a. owned by you; or

b. furnished or available for your regular use.

3. Any vehicle, other than "your covered auto," which is:

a. owned by any "family member;" or

b. furnished or available for the regular use of any "family member."

However, this exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:

a. owned by a "family member;" or

b. furnished or available for the regular use of a "family member."

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

---

# PART B - MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"

1. Caused by accident; and

2. Sustained by an "insured."

We will pay only those expenses incurred within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member:"

a. while "occupying;" or

b. as a pedestrian when struck by;

a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto."

## EXCLUSIONS

We do not provide Medical Payments Coverage for any person for "bodily injury:"

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."

5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by you; or

   b. furnished or available for your regular use.

6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by any "family member;" or

   b. furnished or available for the regular use of any "family member."

However, this exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that person is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. private passenger auto;

   b. pickup or van that you own; or

   c. "trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

   a. discharge of a nuclear weapon (even if accidental);

   b. war (declared or undeclared);

   c. civil war;

   d. insurrection; or

   e. rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

   a. nuclear reaction;

   b. radiation; or

   c. radioactive contamination.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under Part A or Part C.

C. No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Part A or Part C.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

# PART C - UNINSURED MOTORISTS COVERAGE

## INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"

1. Sustained by an "insured;" and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member."

2. Any other person "occupying" "your covered auto."

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. you or any "family member;"

   b. a vehicle which you or any "family member" are "occupying;" or

   c. "your covered auto."

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company;

   a. denies coverage; or

   b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

1. While "occupying," or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. If that person or the legal representative settles the "bodily injury" claim without our consent.

3. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (A.3.) does not apply to a share-the-expense car pool.

4. Using a vehicle without a reasonable belief that that person is entitled to do so.

B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

C. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

2. Paid or payable because of the "bodily injury" under any of the following or similar law:

a. workers' compensation law; or

b. disability benefits law.

C. Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this Part; or

2. As to the amount of damages;

either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

# PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

## INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision:"

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood
7. Malicious mischief or vandalism;
8. Riot or Civil Commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member;" or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. loss; or
   e. destruction.

**TRANSPORTATION EXPENSES**

In addition we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

1. Transportation expenses incurred by you in the event of the total theft of "your covered auto." This applies only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. Loss of use expenses for which you become legally responsible in the event of the total theft of a "non-owned auto." This applies only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto."

We will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

**EXCLUSIONS**

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical or electrical breakdown or failure; or

d. road damage to tires.

This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

3. Loss due to or as a consequence of:
   a. radioactive contamination;
   b. discharge of any nuclear weapon (even if accidental);
   c. war (declared or undeclared);
   d. civil war;
   e. insurrection; or
   f. rebellion or revolution.

4. Loss to:
   a. any electronic equipment designed for the reproduction of sound, including, but not limited to:
      (1) radios and stereos;
      (2) tape decks; or
      (3) compact disc players;
   b. any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:
      (1) citizens band radios;
      (2) telephones;
      (3) two-way mobile radios;
      (4) scanning monitor receivers;
      (5) television monitor receivers;
      (6) video cassette recorders;
      (7) audio cassette recorders; or
      (8) personal computers;
   c. tapes, records, discs, or other media used with equipment described in a. or b.; or
   d. any other accessories used with equipment described in a. or b.

This exclusion (4.) does not apply to:

a. equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in "your covered auto" or any "non-owned auto;" or

b. any other electronic equipment that is:
   (1) necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or
   (2) an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

5. Loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities because you or any "family member:"

a. engaged in illegal activities; or

b. failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

a. acquire during the policy period; and

b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:

a. awnings or cabanas; or

b. equipment designed to create additional living facilities.

9. Loss to equipment designed or used for the detection or location of radar.

10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

a. special carpeting and insulation, furniture or bars;

b. facilities for cooking and sleeping;

c. height-extending roofs; or

d. custom murals, paintings or other decals or graphics.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

a. selling;          d. storing; or

b. repairing;          e. parking;

c. servicing;

vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property.

However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto;"

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

# PART E – DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. to physical exams by physicians we select. We will pay for these exams.

   b. to examination under oath and subscribe the same.

4. Authorize us to obtain:

   a. medical reports; and

   b. other pertinent records.

5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

### OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

### POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. returning this policy to us; or

   b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. at least 10 days notice:

      (1) if cancellation is for nonpayment of premium; or

      (2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   b. at least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   a. for nonpayment of premium; or

   b. if your driver's license or that of:

      (1) any driver who lives with you; or

      (2) any driver who customarily uses "your covered auto;"

      has been suspended or revoked. This must have occurred:

      (1) during the policy period; or

      (2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

   c. if the policy was obtained through material misrepresentation.

B. **Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. If the policy period is other than 1 year, we will have the right not to renew or continue it only at each anniversary of its original effective date.

C. **Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

D. **Other Termination Provisions.**

1. If the law in effect in your state at the time this policy is issued, renewed or continued:

   a. requires a longer notice period;

   b. requires a special form of or procedure for giving notice; or

   c. modifies any of the stated termination reasons;

   we will comply with those requirements.

2. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto."

B. Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## *MUTUAL POLICY CONDITIONS

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force.  Membership entitles you to vote in person or by proxy at meetings of the company.  The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

PRESIDENT                    SECRETARY

Includes Copyrighted material of Insurance Services Office, Inc.,
with its permission
Copyright, Insurance Services Office, Inc., 1988



# NOTICE OF PRIVACY POLICY

Liberty Mutual* values you as a customer and takes your personal privacy seriously. When you apply for insurance, you disclose information about yourself or members of your family. This notice tells you how we treat the information we collect about you.

## 1. INFORMATION WE MAY COLLECT

We collect information about you from:

- Applications or other forms you complete;
- Your business dealings with us and other companies;
- Your employer or association for Liberty Mutual Group products;
- Consumer reporting agencies, Motor Vehicle Departments, inspection services, the Medical Information Bureau and medical providers; and,
- Visits to our Liberty Mutual website.

## 2. TYPES OF INFORMATION WE MAY DISCLOSE

We may disclose the following about you:

- Information from your application or other forms, such as your name, address, vehicle and driver information;
- Information about your transactions with us, our affiliates or others, such as your insurance coverages, payment history, and certain claims information; and,
- Information we receive from third parties, such as your motor vehicle records and claims history.

## 3. TO WHOM INFORMATION MAY BE DISCLOSED

We do not disclose personal information about you to anyone unless allowed by law. We are allowed by law to provide information to:

- A third party that performs services for us, such as claims investigations, inspections, and appraisals;
- Our affiliated companies and reinsurers;
- Insurance regulators and reporting agencies;
- State Motor Vehicle Departments to obtain a report of any accidents or convictions;
- Law enforcement agencies or other government authorities to report suspected illegal activities;
- A person or organization conducting insurance actuarial or research studies which are subject to appropriate confidentiality agreements;
- Companies that provide marketing services on our behalf, or as part of a joint marketing agreement with banks, credit unions, and affinity partners, or providers of annuity and financial products and services offered through us to our customers, which are subject to appropriate confidentiality agreements; and
- As otherwise permitted by law.

## 4. HOW WE PROTECT INFORMATION

We maintain physical, electronic, and procedural safeguards to protect your nonpublic personal information. These safeguards comply with applicable laws. We retain your information for as long as required by law or regulation. The only employees or agents who have access to your information are those who must have it to provide products or services to you. We do not sell your information to mass marketing or telemarketing companies.

*This privacy notice is provided on behalf of the following Liberty Mutual companies and affiliates that provide personal automobile, homeowners, life insurance, annuity and financial products and services: Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, LM Insurance Corporation, The First Liberty Insurance Corporation, Liberty Insurance Company of America, Liberty Northwest Insurance Corporation, Liberty Life Assurance Company of Boston, Liberty Life Securities LLC, Liberty County Mutual Insurance Company (Texas only), Liberty Lloyds of Texas Insurance Company, LM Property and Casualty Insurance Company, LM Personal Insurance Company, and LM General Insurance Company.

## AMENDMENT OF POLICY PROVISIONS - CALIFORNIA

**AS 1133 07 94**

| SCHEDULE | |
|---|---|
| **Waiver of Collision Deductible** | |
| **Description of Your Covered Auto** | **Premium** |

The waiver applies when a "W" follows the deductible amount shown in the declarations under Loss Caused by Collision.  The Premium charge will be included in the Part D.  Annual Premium.

### I. PART A - LIABILITY COVERAGE

Part A is amended as follows:

A. The following exclusion is added:

We do not provide Liability Coverage for any person for "bodily injury" to you or any "family member" whenever the ultimate benefits of that indemnification accrue directly or indirectly to you or any "family member".

B. The Other Insurance provision is replaced by the following:

**OTHER INSURANCE**

If there is other applicable liability insurance:

1. Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance. However, any insurance we provide for a vehicle you do not own will be primary insurance if the vehicle is insured under a policy affording coverage to a named insured engaged in the "business" of:

a. Selling;           e. Testing;

b. Repairing;       f. Road testing;

c. Servicing;        g. Parking; or

d. Delivering;      h. Storing;

motor vehicles. This applies only if an "insured":

a. is operating the vehicle; and

b. is neither the person engaged in such "business" nor that person's employee or agent.

2. Any insurance we provide for a vehicle you own shall be excess to that of;

a. A person engaged in the "business" of;

(1) Selling;         (5) Testing;

(2) Repairing;     (6) Road testing;

(3) Servicing;      (7) Parking; or

(4) Delivering;    (8) Storing;

motor vehicles, if the accident occurs while the vehicle is being operated by that person or that person's employee or agent; or

b. An owner, tenant or lessee of premises on which loss arising out of the loading or unloading of the vehicle occurs.

3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

### II. PART B - MEDICAL PAYMENTS COVERAGE

Paragraph C. of the Limit of Liability provision of Part B is replaced by the following:

C. No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgement that person receives under Part A.

### III. PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

The following provision is added to Part D:

**WAIVER OF COLLISION DEDUCTIBLE**

When there is a loss to "your covered auto" insured for Collision Coverage under this policy, we will pay the full Collision deductible if:

1. The loss involves an "uninsured motor vehicle", as the term is defined in items 1. and 4. of the "uninsured motor vehicle" definition in the Uninsured Motorists Coverage endorsement;

2. You are legally entitled to recover the full amount of the loss from the owner or operator of the "uninsured motor vehicle"; and

3. A specific premium charge in the Schedule or in the Declarations indicates that the Waiver of Collision Deductible provision applies to that vehicle.

Subject to the above, if you are legally entitled to recover only a percentage of the loss, we will pay that percentage of your deductible. However, if the amount of the loss is less than your deductible, we

AS 1133 07 94

will pay the percentage of the loss you are legally entitled to recover.

In no event will we pay more than the amount of the loss.

The Arbitration and Duties After An Accident Or Loss provisions in the Uninsured Motorists Coverage endorsement apply to the Waiver of Collision Deductible provision.

## IV. PART F - GENERAL PROVISIONS

Part F is amended as follows:

A. The Our Right to Recover Payment provision is amended as follows:

**OUR RIGHT TO RECOVER PAYMENT**

Paragraph A. of this provision does not apply to Part B.

B. The Termination provision is amended as follows:

**TERMINATION**

1. Section 3, of paragraph A. Cancellation is replaced by the following:

After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

  a. For nonpayment of premium; or

  b. If your driver's license or that of:

    (1) Any driver who lives with you; or

    (2) Any driver who customarily uses your "covered auto";

    has been suspended or revoked. This must have occurred:

    (1) During the policy period; or

    (2) 60 days prior to the most recent renewal or effective date of the policy and we had no notice of such suspension or revocation.

However, with respect to a suspended driver's license, such cancellation will not become effective if the suspension is removed prior to the time that the cancellation of the policy is to become effective; or

  c. If the policy was obtained through material misrepresentation.

2. Section 3. of Paragraph D. Other Termination Provision is replaced by the following:

**Other Termination Provisions**

If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. If we cancel, we will refund you the pro rata unearned premium. If you cancel, we will refund you 90% of the pro rata unearned premium. However, making or offering to make the refund is not a condition of cancellation.

C. The following provision is added.

If the Mexico Coverage endorsement is attached to this policy, the following warning applies:

### WARNING

Unless you have automobile insurance written by a Mexican insurance company, you may spend many hours or days in jail, if you have an accident in Mexico. Insurance coverage should be secured from a company licensed under the law of Mexico to write insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your automobile.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes Material Copyrighted by Insurance Services Office, Inc., with their permission
Copyright, Insurance Services Office, Inc., 1994

# AMENDMENT OF POLICY DEFINITIONS

## THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY

*THIS ENDORSEMENT SUPERCEDES ALL OTHER ENDORSEMENTS WHICH HAVE BEEN MADE PART OF YOUR POLICY AND REFERENCE THESE SAME PROVISIONS.*

It is agreed that item **A.** under the **DEFINITIONS** provisions of the contract is deleted and replaced with the following:

**A.** Throughout this policy, "you" and "your" refer to:
   1. the spouse of the "named insured" shown in the Declarations, if a resident of the same household; or
   2. the partner in a civil union, registered domestic partnership or other similar union or partnership, with the "named insured" shown on the Declarations, if a resident of the same household.

Section **2.** above, only applies if the civil union, registered domestic partnership or other similar union or partnership is validly entered into under the law of any state, territory or possession of the United States of America, any territory or province of Canada, or the equivalent of a state or province of any other country.

It is further agreed that paragraph **A.** of the **TRANSFER OF YOUR INTEREST IN THIS POLICY** is deleted and replaced with the following:

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

   1. the surviving spouse or partner in a civil union, registered domestic partnership or other similar union or partnership, if a resident of the household at the time of death. Coverage applies to the spouse or partner in a civil union, registered domestic partnership or other similar union or partnership as if a named insured shown in the declarations; and
   2. the legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

All other terms and conditions of this policy remain unchanged.

**Liberty Mutual.**

# CALIFORNIA AUTO POLICY
## INFORMATION

The following information is provided by Liberty Mutual to help you understand the Vehicle Classifications and Good Driver Discount plan that may affect the premium you pay for your automobile insurance.

### RATING CLASS INFORMATION

The premiums on your policy are based principally on the use of the car, including annual mileage, and the number of years licensed of the regular operators. The principal rating factors and annual mileage groups are shown below and the corresponding RATING CLASS numbers and ANNUAL MILEAGE GROUP numbers are shown under RATING CLASS on the policy.

### PRINCIPAL COMPONENTS OF APPLICABLE CLASSIFICATIONS

Rating Class

| | |
|---|---|
| 01 | Licensed less than 2 years, unmarried female occasional operator. |
| 02 | Licensed less than 2 years, unmarried female principle operator. |
| 03 | Licensed less than 2 years, married female. |
| 04 | Licensed less than 2 years, unmarried male occasional operator. |
| 05 | Licensed less than 2 years, married male. |
| 06 | Licensed less than 2 years, unmarried male principle operator. |
| 07 | Licensed at least 2 years but less than 4, unmarried female occasional operator. |
| 08 | Licensed at least 2 years but less than 4, unmarried female principle operator. |
| 09 | Licensed at least 2 years but less than 4, married female. |
| 10 | Licensed at least 2 years but less than 4, unmarried male occasional operator. |
| 11 | Licensed at least 2 years but less than 4, married male. |
| 12 | Licensed at least 2 years but less than 4, unmarried male principle operator. |
| 13 | Licensed at least 4 years but less than 8, unmarried female occasional operator. |
| 14 | Licensed at least 4 years but less than 8, unmarried female principle operator. |
| 15 | Licensed at least 4 years but less than 8, married female. |
| 16 | Licensed at least 4 years but less than 8, unmarried male occasional operator. |
| 17 | Licensed at least 4 years but less than 8, married male. |
| 18 | Licensed at least 4 years but less than 8, unmarried male principle operator. |
| 19 | Licensed at least 8 years but less than 10, unmarried female. |
| 20 | Licensed at least 8 years but less than 10, married female. |
| 21 | Licensed at least 8 years but less than 10, unmarried male. |
| 22 | Licensed at least 8 years but less than 10, married male. |
| 23 | Licensed at least 10 years but less than 14, unmarried female, pleasure use or commuting less than 3 miles one way. |
| 24 | Licensed at least 10 years but less than 14, unmarried female, commuting 3-9.9 miles one way. |
| 25 | Licensed at least 10 years but less than 14, unmarried female, commuting 10 or more miles one way. |
| 26 | Licensed at least 10 years but less than 14, unmarried male, pleasure use or commuting less than 3 miles one way. |

AUTO 1967 R18                    Liberty Mutual Fire Insurance Company                    Page 1 of 4

PF

| | |
|---|---|
| 27 | Licensed at least 10 years but less than 14, unmarried male, commuting 3-9.9 miles one way. |
| 28 | Licensed at least 10 years but less than 14, unmarried male, commuting 10 or more miles one way. |
| 29 | Licensed at least 10 years but less than 14, married female, pleasure use or commuting less than 3 miles one way. |
| 30 | Licensed at least 10 years but less than 14, married female, commuting 3-9.9 miles one way. |
| 31 | Licensed at least 10 years but less than 14, married female, commuting 10 or more miles one way. |
| 32 | Licensed at least 10 years but less than 14, married male, pleasure use or commuting less than 3 miles one way. |
| 33 | Licensed at least 10 years but less than 14, married male, commuting 3-9.9 miles one way. |
| 34 | Licensed at least 10 years but less than 14, married male, commuting 10 or more miles one way. |
| 35 | Licensed at least 14 years but less than 24, unmarried female, pleasure use or commuting less than 3 miles one way. |
| 36 | Licensed at least 14 years but less than 24, unmarried female, commuting 3-9.9 miles one way. |
| 37 | Licensed at least 14 years but less than 24, unmarried female, commuting 10 or more miles one way. |
| 38 | Licensed at least 14 years but less than 24, unmarried male, pleasure use or commuting less than 3 miles one way. |
| 39 | Licensed at least 14 years but less than 24, unmarried male, commuting 3-9.9 miles one way. |
| 40 | Licensed at least 14 years but less than 24, unmarried male, commuting 10 or more miles one way. |
| 41 | Licensed at least 14 years but less than 24, married female, pleasure use or commuting less than 3 miles one way. |
| 42 | Licensed at least 14 years but less than 24, married female, commuting 3-9.9 miles one way. |
| 43 | Licensed at least 14 years but less than 24, married female, commuting 10 or more miles one way. |
| 44 | Licensed at least 14 years but less than 24, married male, pleasure use or commuting less than 3 miles one way. |
| 45 | Licensed at least 14 years but less than 24, married male, commuting 3-9.9 miles one way. |
| 46 | Licensed at least 14 years but less than 24, married male, commuting 10 or more miles one way. |
| 47 | Licensed at least 24 years but less than 54, unmarried female principal operator, pleasure use or commuting less than 3 miles one way. |
| 48 | Licensed at least 24 years but less than 54, unmarried female, commuting 3-9.9 miles one way. |
| 49 | Licensed at least 24 years but less than 54, unmarried female, commuting 10 or more miles one way. |
| 50 | Licensed at least 24 years but less than 54, unmarried male, pleasure use or commuting less than 3 miles one way. |
| 51 | Licensed at least 24 years but less than 54, unmarried male, commuting 3-9.9 miles one way. |
| 52 | Licensed at least 24 years but less than 54, unmarried male, commuting 10 or more miles one way. |
| 53 | Licensed at least 24 years but less than 54, married female, pleasure use or commuting less than 3 miles one way. |
| 54 | Licensed at least 24 years but less than 54, married female, commuting 3-9.9 miles one way. |
| 55 | Licensed at least 24 years but less than 54, married female, commuting 10 or more miles one way. |
| 56 | Licensed at least 24 years but less than 54, married male, pleasure use or commuting less than 3 miles one way. |
| 57 | Licensed at least 24 years but less than 54, married male, commuting 3-9.9 miles one way. |
| 58 | Licensed at least 24 years but less than 54, married male, commuting 10 or more miles one way. |
| 59 | Licensed 54 years or more, unmarried female, pleasure use or commuting less than 3 miles one way. |
| 60 | Licensed 54 years or more, unmarried female, commuting 3-9.9 miles one way. |
| 61 | Licensed 54 years or more, unmarried female, commuting 10 or more miles one way. |
| 62 | Licensed 54 years or more, unmarried male, pleasure use or commuting less than 3 miles one way. |
| 63 | Licensed 54 years or more, unmarried male, commuting 3-9.9 miles one way. |
| 64 | Licensed 54 years or more, unmarried male, commuting 10 or more miles one way. |
| 65 | Licensed 54 years or more, married female, pleasure use or commuting less than 3 miles one way. |
| 66 | Licensed 54 years or more, married female, commuting 3-9.9 miles one way. |

| 67 | Licensed 54 years or more, married female, commuting 10 or more miles one way. |
| 68 | Licensed 54 years or more, married male, pleasure use or commuting less than 3 miles one way. |
| 69 | Licensed 54 years or more, married male, commuting 3-9.9 miles one way. |
| 70 | Licensed 54 years or more, married male, commuting 10 or more miles one way. |
| 71 | Licensed at least 10 years but less than 14, business use. |
| 72 | Licensed at least 14 years but less than 24, business use. |
| 73 | Licensed at least 24 years but less than 54, business use. |
| 74 | Licensed 54 years or more, business use. |
| 99 | Excess vehicle. |

Annual Mileage Group

| 1 | Uses auto less than or equal to 2,500 miles annually. |
| 2 | Uses auto 2,501 - 5,500 miles annually. |
| 3 | Uses auto 5,501 - 7,500 miles annually. |
| 7 | Uses auto 7,501 - 8,500 miles annually. |
| 8 | Uses auto 8,501 - 9,500 miles annually. |
| 9 | Uses auto 9,501 - 10,500 miles annually. |
| 10 | Uses auto 10,501 - 12,500 miles annually. |
| 11 | Uses auto 12,501 - 15,500 miles annually. |
| 12 | Uses auto 15,501 - 18,500 miles annually. |
| 13 | Uses auto 18,501 - 20,500 miles annually. |
| 14 | Uses auto over 20,501 miles annually. |

## DRIVING RECORD

Your driving record will affect the rate you pay for your insurance coverage. We will charge our best rate if all regular drivers of the insured vehicle have had no accidents and no convictions during the last three years. We will charge a higher rate if during the last three years the regular drivers of the vehicle have received moving traffic violations or have been involved in one or more accidents for which they were at least 51% at fault. The more violations and at-fault accidents the regular operators accumulate, the more the premium is increased. If your vehicle(s) premium has been adjusted due to the incidence of accident and violation convictions, your declarations page will indicate an accident or conviction point for each occurrence.

Driving Record Points are determined as described below.

1. Determine the conviction and accident record of each principal and occasional operator. Use only accidents and convictions which have occurred during the 3 year period immediately preceding the effective date of the policy.

    a. Convictions

      (1) The following convictions shall be considered serious convictions:

        (a) Failure to stop at the scene of an accident;

        (b) Reckless Driving;

        (c) Driving a motor vehicle with a blood alcohol level equal to or in excess of 0.08 percent;

        (d) Driving under the influence of any alcoholic beverage, drug or any combination of the two, and causing bodily injury to a person other than the driver,

        (e) Vehicle manslaughter;

        (f) Causing bodily injury or death while evading a police officer;

        (g) Driving the wrong way on a divided highway;

        (h) Driving in excess of 100 miles per hour;

        (i) Engaging in, or aiding or abetting in any motor vehicle speed contest on a highway; or

(j) Illegal transportation of explosives.

(2) **One point** shall be assigned for each conviction not listed in (1) above.

(3) **No Points** will be assigned for:

(a) a violation of motor vehicle equipment requirements of the motor vehicle and traffic laws except improper lights or inadequate brakes.

(b) failure to display current license plates, registration stickers or inspection stickers provided they are in existence, as required.

(c) failure to sign or have in possession an operator's license, chauffeur's license, or registration certificates, provided they are in existence.

(d) a conviction that qualifies for a point under (2) if the violations occurred with an accident that is being assigned points under subsection b. Accidents.

b.  Accidents

(1) **One point** shall be assigned for each automobile accident where the operator was principally at fault. An operator may be determined to be principally at fault when the accident:

(a) resulted only in damage to property and that accident:

(i) was a solo vehicle accident, or

(ii) was a multiple vehicle accident where the operators actions and omissions were at least 51% of the proximate cause of the accident.

(b) resulted in bodily injury or death to any person and the operators actions and omissions were at least 51% of the proximate cause of the accident.

In accidents not resulting in death, the total loss or damage caused by the accident, which occurs:

(a) prior to January 1, 2003, the resulting damage must exceed $500.

(b) on or after January 1, 2003, the resulting damage must exceed $750.

(2) **No points** will be assigned for accidents where the operator was not considered to be principally at-fault as follows:

(a) The vehicle was lawfully parked at the time of the accident. A vehicle rolling from a parked position shall not be considered to be lawfully parked, but shall be considered as in the operation of the last operator;

(b) The vehicle was struck in the rear by another vehicle, and the driver has not been convicted of a moving traffic violation in connection with the accident;

(c) The driver was not convicted of a moving traffic violation and the operator of another vehicle involved in the accident was convicted of a moving traffic violation;

(d) The driver's vehicle was damaged as a result of contact with a vehicle operated by a "hit-and-run" operator of another vehicle and the accident was reported to legal authorities within a reasonable time after the accident;

(e) The accident resulted from contact with animals, birds, or falling objects;

(f) The driver was responding to a call of duty as a paid or volunteer member of any police or fire department, first aid squad, or of any law enforcement agency, while performing any other governmental function in a public emergency;

(g) The accident was a solo vehicle accident that was principally caused by a hazardous condition of which a driver, in the exercise of reasonable care, would not have noticed (for example, "black ice").

2.  Conviction and Accident Forgiveness

If the policy has been continuously in force during the 5 year period ending immediately prior to the renewal, the first conviction or accident determined in Section a. or b. above will be forgiven. Any subsequent convictions or accidents will be applied in accordance with the conviction and accident descriptions listed above. Only one conviction or accident will be forgiven per policy.

**NOTE: SERIOUS CONVICTIONS OCCURRING UNDER SECTION a. (1) ARE NOT SUBJECT TO FORGIVENESS.**



## Auto Body Repair Consumer Bill of Rights

**A CONSUMER IS ENTITLED TO:**

1. **SELECT THE AUTO BODY REPAIR SHOP TO REPAIR AUTO BODY DAMAGE COVERED BY THE INSURANCE COMPANY. AN INSURANCE COMPANY MAY NOT REQUIRE THE REPAIRS TO BE DONE AT A SPECIFIC AUTO BODY REPAIR SHOP.**

2. **AN ITEMIZED WRITTEN ESTIMATE FOR AUTO BODY REPAIRS AND, UPON COMPLETION OF REPAIRS, A DETAILED INVOICE. THE ESTIMATE AND THE INVOICE MUST INCLUDE AN ITEMIZED LIST OF PARTS AND LABOR ALONG WITH THE TOTAL PRICE FOR THE WORK PERFORMED. THE ESTIMATE AND INVOICE MUST ALSO IDENTIFY ALL PARTS AS NEW, USED, AFTERMARKET, RECONDITIONED, OR REBUILT.**

3. **BE INFORMED ABOUT COVERAGE FOR TOWING SERVICES. UNLESS THE INSURANCE COMPANY HAS PROVIDED AN INSURED WITH THE NAME OF A SPECIFIC TOWING COMPANY PRIOR TO THE INSURED'S USE OF ANOTHER TOWING COMPANY, THE INSURANCE COMPANY MUST PAY ALL REASONABLE TOWING CHARGES OF THE TOWING COMPANY USED BY THE INSURED.**

4. **BE INFORMED ABOUT THE EXTENT OF COVERAGE, IF ANY, FOR A REPLACEMENT RENTAL VEHICLE WHILE A DAMAGED VEHICLE IS BEING REPAIRED. BE INFORMED OF WHERE TO REPORT SUSPECTED FRAUD OR OTHER COMPLAINTS AND CONCERNS ABOUT AUTO BODY REPAIRS.**

### COMPLAINTS WITHIN THE JURISDICTION OF THE BUREAU OF AUTOMOTIVE REPAIR

Complaints concerning the repair of a vehicle by an auto body repair shop should be directed to:

**Toll Free (800) 952-5210**
**California Department of Consumer Affairs**
**Bureau of Automotive Repair**
**10240 Systems Parkway Sacramento, CA 95827**

The Bureau of Automotive Repair can also accept complaints over its web site at: **www.autorepair.ca.gov**

### COMPLAINTS WITHIN THE JURISDICTION OF THE CALIFORNIA INSURANCE COMMISSIONER

Any concerns regarding how an auto insurance claim is being handled should be submitted to the California Department of Insurance at:

**(800) 927-HELP or (213) 897-8921**
**California Department of Insurance**
**Consumer Services Division**
**300 South Spring Street Los Angeles, CA 90013**

The California Department of Insurance can also accept complaints over its web site at:

**www.insurance.ca.gov**

Last Revised - January 03, 2001
Copyright © California Department of Insurance

AUTO 3682                                                                                      PF



# CALIFORNIA AUTOMOBILE POLICY DISCOUNT INFORMATION

Liberty Mutual is pleased to offer you various discounts applicable to your policy premium to those policy-holders who qualify. Below is a description of the discounts available. If you have any questions about the discounts, or think you may be eligible for one of the discounts below, please contact us at the number shown on your declarations. A representative will be happy to assist you.

**(1) MULTI-CAR CREDIT**

The premium will be reduced if the company insures two or more private passenger or truck type auto-mobiles and all are owned or all leased by named insureds residing in the same household, and the vehicles are insured by any company within the Liberty Mutual Group.

**(2) GOOD STUDENT CREDIT**

The premium shall be reduced on policies rated to include operators with less than 8 years driving experience. To qualify, the student must be a full-time student in high school or enrolled as a full-time student in a college or university, and ranked in the top 20% of the class or maintain a "B" average or better or on the Dean's list or equivalent during the previous school quarter or term.

**(3) DRIVER TRAINING CREDIT**

The premium is reduced where satisfactory evidence (certificate signed by a school official) is presented that every operator of the automobile with less than four years driving experience, including the applicant, who customarily operates the automobile has successfully completed a driver education course meeting the minimum standards.

**(4) ANTI-LOCK BRAKING SYSTEM DISCOUNT**

Private Passenger automobiles equipped with a factory installed Anti-Lock Braking System on all four wheels shall be eligible for a premium reduction on Liability Coverage and Medical Payments.

**(5) PASSIVE RESTRAINT DISCOUNT**

To qualify for this discount applicable to Medical Payments, the vehicle must be equipped with a factory installed Passive Restraint System - air bags or automatic motorized seat belt, which meets published Federal Safety Standards. The discount afforded varies by Coverage and by type of system.

**(6) MATURE DRIVER IMPROVEMENT COURSE DISCOUNT**

The premium for Liability Coverage and Medical Payments shall be reduced provided the principal operator is age 55 or older, and has a completion certificate dated within the most recent 36 months certifying that the operator has successfully completed the Mature Driver Improvement Course approved by the California Department of Motor Vehicles. In addition, during the most recent 3 years, the operator has not been involved in an at-fault auto accident, or convicted of a violation, or a traffic offense involving alcohol or narcotics.

**(7) ANTI-THEFT DEVICES DISCOUNT**

Liberty Mutual offers several anti-theft devices discounts applicable to the Damage To Your Auto (Excluding Collision) Coverage at various premium reductions depending on the type of device installed. Below is a listing of the various devices for which a discount is available:

a. Theft Alarm - a device which sounds an audible alarm that can be heard at a distance of at least 300 feet for a minimum of three minutes.

b. Active Disabling Device - a device which is activated by a separate manual step, which disables the vehicle by making the fuel, ignition or starting system inoperative.

c. Passive Disabling Device - a device which does not require a separate manual step to activate, which disables the vehicle by making the fuel ignition or starting system inoperative.

d. Vehicle Recovery System Device - an electronic device which is activated after a vehicle is stolen that aids law enforcement organizations in the location and recovery of the vehicle.

**(8) GOOD DRIVER DISCOUNT PLAN**

The Good Driver Discount Plan does not apply to policies written in Liberty Insurance Corporation.

Private passenger vehicles and motorcycles are eligible for a Good Driver Discount of 20% if **each** operator assigned to that vehicle:

a. **has** been licensed to drive a motor vehicle for three or more years as of the effective date of the policy, of which 18 months must be in the United States or Canada;

b. **has not** been assigned a total of more than one point for accidents and convictions which occurred during the three year period immediately preceding the effective date of the policy. One at-fault accident resulting in Property Damage payment or a not-at-fault accident (less than 50% fault) is permitted. However, any at-fault accident resulting in any Bodily Injury payment disqualifies a driver from receiving the discount;

c. **has not** had more than one dismissal (pursuant to the Vehicle Code) which was not made confidential in the experience period;

d. **has not** been convicted of the Vehicle Code provision which states that it is unlawful for a person under the age of 21 who has 0.01 percent, by weight, of alcohol in his or her blood to drive a vehicle.

e. **has not** been convicted of driving under the influence (drug or alcohol) related offenses effective 1/1/96 and after referenced in Section 23140, 23152 or 23153 during the previous seven years.

**(9) ACCOUNT DISCOUNT**

If the company insures a private passenger or truck type vehicle and the named insured also maintains a Homeowner policy (all Basic Homeowner forms HO2, HO3, HO6, or HO-4) with the Liberty Mutual Group, a 10% credit will be applied to the Auto policy. This credit is applicable to Liability and Physical Damage rates for all rating classifications.

**(10) EDUCATED/PROFESSIONAL GROUP DISCOUNT**

Named insureds who are members of a specific professional group can be eligible to have their applicable rates reduced up to 20% for all motor vehicle policies held in their name. Please contact your local Liberty Mutual sales office to verify which professional groups are eligible for this discount.

**(11) GROUP SAVINGS PLUS DISCOUNT**

Named insureds who are employees of qualifying participating employers or members of a qualifying participating association may be eligible for a premium reduction.

**(12) SPONSORED ALUMNI GROUP DISCOUNT**

Named insureds who are members of qualifying alumni groups may be eligible for a premium reduction.

POLICY NUMBER:

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AS 2127 03 00**

## UNINSURED MOTORISTS COVERAGE - CALIFORNIA

**(PP 04 87 02 00)**

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

### SCHEDULE

| Uninsured Motorists Coverage | Limit Of Liability | Premium | | |
|---|---|---|---|---|
| | | Auto 1 | Auto 2 | Auto 3 |
| 1. Bodily Injury | $ _____ each accident | $ _____ | $ _____ | $ _____ |
| 2. Property Damage | $3,500 each accident | $ _____ | $ _____ | $ _____ |

**I. Part C - Uninsured Motorists Coverage**

Part C is replaced by the following:

As used in this endorsement, "you" and "your" refer to the "named insured" shown in the Declarations and spouse.

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:

1. "Bodily injury" sustained by an "insured" and caused by an accident, and

2. "Property damage" caused by an accident if the Schedule or Declarations indicates that "property damage" Uninsured Motorists Coverage applies to that auto. Only Items 1. and 4. under the definition of "uninsured motor vehicle" apply to "property damage".

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle". With respect to coverage under Item 2. of the definition of "uninsured motor vehicle", we will pay only after the limits of liability under any liability bonds or policies applicable to the "uninsured motor vehicle" have been exhausted by payment of judgments or settlements.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this endorsement means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person in 1. or 2. above.

However, with respect to coverage for "bodily injury", "insured" does not include any person who sustains "bodily injury" while "your covered auto" is being used as a public or livery conveyance. This exception does not apply to a share-the-expense car pool.

C. "Property damage" as used in this endorsement means injury to or destruction of "your covered auto". However, "property damage" does not include:

1. Loss of use of "your covered auto"; or

2. Damage to personal property contained in "your covered auto" other than a child passenger restraint system that:

   a. Meets the applicable federal motor vehicle safety standards; and

   b. Was in use by a child at the time of the accident for which this coverage applies.

D. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no liability bond or policy applies at the time of the accident.

2. Which, with respect to damages for "bodily injury" only, is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident but its limit for liability is less than the limit of liability for this coverage.

AS 2127 03 00
(PP 04 87 02 00)

3. Which, with respect to damages for "bodily injury" only, is a hit-and-run vehicle whose owner or operator cannot be identified and which makes physical contact with:

   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or

   c. "Your covered auto".

4. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage;

   b. Refuses to admit coverage except conditionally or with reservation; or

   c. Is or becomes insolvent.

With respect to coverage for "property damage", the accident must involve direct physical contact between "your covered auto" and the "uninsured motor vehicle", and:

1. The owner or operator of the "uninsured motor vehicle" must be identified; or

2. The "uninsured motor vehicle" must be identified by its license number.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Designed or modified for use primarily off public roads while not on public roads.

5. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by:

   a. Any motor vehicle; or

   b. A trailer of any type used with a motor vehicle;

   owned by that "insured" which is not insured for this coverage under this policy.

2. By any "family member" while "occupying", or when struck by any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim without our consent.

   This Exclusion (B.1.) does not apply to a settlement made with the insurer of a vehicle described in Section 2. of the definition of "uninsured motor vehicle".

2. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (B.2.) does not apply to a "family member" using "your covered auto" which is owned by you.

3. While "occupying" a motor vehicle rented or leased to that "insured" for use as a public or livery conveyance.

C. We do not provide Uninsured Motorists Coverage for "property damage" sustained by any "insured" while "occupying" or when struck by any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy.

D. This coverage shall not apply:

1. To "property damage" to:

   a. A trailer of any type;

   b. Any motor vehicle owned by you to which Collision Coverage applies under this policy; or

   c. Any other motor vehicle to the extent that there is valid and collectible Collision Coverage applicable to that damage under any other policy.

2. Directly or indirectly to benefit:

   a. Any insurer or self-insurer under any of the following or similar law:

      (1) Workers' compensation law; or

      (2) Disability benefits law.

   b. Any insurer of property.

3. Directly to the benefit of the United States or any state or political subdivision thereof.

E. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

Our maximum limit of liability for all damages for "property damage" resulting from any one accident will be the lesser of:

1. The Limit of Property Damage Liability shown in the Schedule or in the Declarations;

2. The actual cash value of "your covered auto"; or

3. The amount of any deductible if there is valid and collectible Collision Coverage under any other policy.

An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of the loss.

The limit of Bodily Injury Liability or Property Damage Liability shown in the Schedule or in the Declarations is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or Declarations; or

4. Vehicles involved in the accident.

B. With respect to coverage under Item 2. of the definition of "uninsured motor vehicle", the limit of liability shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy; and

2. Paid or payable because of the "bodily injury" under any automobile medical payments coverage. This includes all sums paid under Part B.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A or Part B of this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any workers' compensation law exclusive of non-occupational disability benefits.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this coverage; or

2. As to the amount of damages;

then the matter will be settled by arbitration. Such arbitration may be initiated by a written demand for arbitration made by either party. The arbitration shall be conducted by a single neutral arbitrator. With respect to "property damage", arbitration proceedings must be formally instituted by the "insured" within 1 year from the date of the accident. Disputes concerning coverage under this part may not be arbitrated.

**AS 1006** (Ed. 12-89)

## MEXICO EXTENSION ENDORSEMENT

The coverage applying to "your covered auto" under Parts A, B and D of this policy also applies to accidents and losses while the automobile is in the Republic of Mexico, but not more than 75 miles from the United States border. This coverage is subject to these additional provisions:

1.  The insurance applies only if, at the time of accident or loss, the automobile has not been in the Republic of Mexico more than 10 consecutive days.

2.  We have no obligation to defend any suit and the Supplementary Payments provisions of Part A and the Transportation Expense provision of Part D do not apply.

3.  In addition to the applicable limit of liability, we will pay (a) expenses you incur for first aid to others at the time of an accident for bodily injury covered by this policy and (b) reasonable expenses, except loss of earnings, you incur at our request.

4.  No settlement of any claim or suit will obligate us under this endorsement without our written consent.

5.  Except for Medical Payments Coverage, this insurance shall be excess over any other collectible insurance available to you as an insured under a policy applying to the automobile or otherwise. The Medical Payments Coverage shall be excess over any other collectible automobile medical payments insurance.

6.  If a loss to "your covered auto" requires repair or replacement while the automobile is in Mexico, the most we will pay is the cost of the repair or replacement at the nearest point in the United States where it can be made.

**WARNING** - If you have an automobile accident in Mexico and don't have insurance written by an insurance company licensed in Mexico, you could spend many hours or days in jail. You should arrange for coverage from a licensed Mexican company to avoid complications and some other penalties possible under the laws of Mexico, including impounding of your car. (Liberty is not licensed to write insurance in Mexico.)

(See below for explanation)

### IMPORTANT

This endorsement extends **LIMITED COVERAGE.**

Under Mexican law automobile insurance policies written by United States companies are not recognized or considered valid for accidents or losses occurring in Mexico. United States insurance companies are not permitted, directly or through Mexican agents, to assist their policyholders, investigate, settle or defend claims or suits in Mexico.

Notwithstanding the above we have included limited Mexican coverage (limited to 75 miles of the U.S. border and 10 consecutive days in Mexico) in your automobile insurance policy. This extension is made to Liberty policyholders because your U.S. coverage is broader than that extended by Mexican companies and it is possible, under certain conditions, to reimburse you for a loss on your return to the states.

If you are planning a motor trip into Mexico you should contact one of the many agents representing reliable Mexican insurance companies and purchase a short term "Special Automobile Policy for Tourists" to protect you during your stay in that country. You will find these agents in practically every American city or town near the border.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the arbitrator equally.

C. Any decision of the arbitrator will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages.

## II. Duties After An Accident Or Loss

Paragraph C. of Part E is replaced by the following:

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Send us copies of the legal papers if a suit is brought.

A person seeking coverage for "bodily injury" sustained in an accident involving a vehicle described in Item 2. of the definition of "uninsured motor vehicle" must:

1. Provide us with a copy of the complaint by personal service or certified mail, if the "insured" brings action against the owner or operator of the "uninsured motor vehicle".

2. Within a reasonable time, make available all pleadings and depositions for copying by us or furnish us copies at our expense.

3. Provide us with proof that the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

A person seeking Uninsured Motorists Coverage for "property damage" must also notify us or our agent within 10 business days of the accident.

## III. General Provisions

Part F is amended as follows with respect to Uninsured Motorists Coverage:

A. The Legal Action Against Us Provision is replaced by the following:

**LEGAL ACTION AGAINST US**

No legal action may be brought against us until:

1. There has been full compliance with all the terms of the policy; and

2. With respect to an accident involving a vehicle described in Items 1., 3. and 4. of the definition of "uninsured motor vehicle", one of the following actions are taken within 1 year from the date of the accident:

a. Agreement as to the amount of damages for "bodily injury" due under this coverage has been concluded;

b. The "insured" or his legal representative has formally instituted arbitration proceedings by notifying us in writing.

With respect to "bodily injury", such notification must be sent by certified mail, return receipt requested; or

c. Suit for "bodily injury" has been filed against the uninsured motorist in a court of competent jurisdiction. Written notice of the suit must be provided to us within a reasonable time after the "insured" knew or should have known of the uninsured status of the other motorist. In no event will such notice be required before one year from the date of the accident. Failure of the "insured" or his representative to provide such notice will not be a basis for a denial of coverage unless such failure prejudices our rights.

B. The Our Right To Recover Payment Provision is amended as follows:

**OUR RIGHT TO RECOVER PAYMENT**

1. Paragraph A. of this provision does not apply to coverage under Item 2. of the definition of "uninsured motor vehicle".

2. Paragraph B. of this provision does not apply to coverage under Items 1., 3. or 4. of the definition of "uninsured motor vehicle".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

Copyright, Insurance Services Office, Inc., 1999

AS 2185 06 03

## NUCLEAR, BIO-CHEMICAL & MOLD EXCLUSION ENDORSEMENT

## THIS EXCLUSION APPLIES TO <u>ALL COVERAGES</u> PROVIDED BY THIS POLICY INCLUDING ANY AND ALL ENDORSEMENTS

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

We do not provide coverage for loss, damage, injury, liability, cost or expense due to or as a consequence of:

    a. Nuclear exposure or explosion including resulting fire, radiation or contamination; or

    b. Bio-chemical attack or exposure to bio-chemical agents.

We do not provide coverage for loss, damage, injury, liability, cost or expense arising out of or aggravated by, in whole or in part, "**Mold, Fungus, Wet Rot, Dry Rot, Bacteria or Virus.**"

"**Mold, Fungus, Wet Rot, Dry Rot, Bacteria or Virus**" means any type or form of fungus, rot, virus or bacteria. This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or virus.

AS 2185 06 03                         ©2003 Liberty Mutual Insurance Company                         PF

---

AS 1046 (Ed. 12-89)

## AUTOMATIC TERMINATION ENDORSEMENT

The AUTOMATIC TERMINATION Provision in Part F of the policy is replaced with the following:

    AUTOMATIC TERMINATION. If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

PF

**PERSONAL AUTO**
**AS 2112 10 99**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW VEHICLE REPLACEMENT COST COVERAGE

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

In the event of a covered total loss to a new *"your covered auto" shown in the Declarations for which a specific premium charge indicates that "Collision" Coverage and/or Other Than Collision Coverage applies, the "covered auto" will be replaced at the Actual Cash Value (less any applicable deductible) without adjustments for depreciation that is referenced in the Limit of Liability B. Section of **Part D** of the policy.

* A new vehicle as used in this endorsement is one that has not been previously titled under the motor vehicle laws of any state.

Replacement Cost for a total loss on a new "your covered auto" applies as follows:

a. total loss must occur during the first 12 months of insurance coverage, and

b. within the vehicle's first 15,000 miles,

whichever occurs first, we will pay, at our option, the full cost of repair or replacement, less the applicable deductible.

This does not apply to a substitute automobile, a non-owned automobile or a vehicle leased under a long-term contract of 6 months or longer.

The following conditions apply:

1. Our liability for any loss will not be more than the cost to replace the damaged property with:

   a. a previously untitled vehicle of the year, make, model and equipment of the damaged automobile or, if unavailable

   b. a vehicle that is most similar in class and body type to the year, make, model and equipment of the damaged automobile.

2. We will not pay for any loss before the actual repair or replacement is completed.

3. We have the right to pay the loss in money or to repair or replace the damaged automobile.

For purposes of this endorsement, Total Loss means a loss in which the cost to replace or repair the vehicle to its pre-loss condition plus salvage value, equals or exceeds the actual cost value.

PF

PERSONAL AUTO
PP 13 01 12 99

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I. Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II. Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 13 01 12 99    Copyright, Insurance Services Office, Inc., 1999    Page 1 of 1

# TOWING AND LABOR COSTS COVERAGE

PP 03 03 04 86

## SCHEDULE

| Description of Your Covered Auto | Limit of Towing and Labor Costs Coverage | Premium |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |

We will pay towing and labor costs incurred each time "your covered auto" or any "non-owned auto" is disabled, up to the amount shown in the Schedule or in the Declarations as applicable to that vehicle.  If a "non-owned auto" is disabled, we will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Schedule or in the Declarations.  We will only pay for labor performed at the place of disablement.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 03 04 86    Copyright, Insurance Services Office, Inc., 1985    PF

PP 03 05 08 86

## LOSS PAYABLE CLAUSE

Loss Payee: _____

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations or in this endorsement. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto." However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 05 08 86            Copyright, Insurance Services Office, Inc., 1986                PF

# SPLIT LIABILITY LIMITS

PP 03 09 04 86

### SCHEDULE

| | | |
|---|---|---|
| **Bodily Injury Liability** | $ _____ | each person |
| | $ _____ | each accident |
| **Property Damage Liability** | $ _____ | each accident |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

## LIMIT OF LIABILITY

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 09 04 86        Copyright, Insurance Services Office, Inc., 1985        PF

PERSONAL AUTO
PP 04 92 04 86

# SPLIT UNINSURED MOTORISTS LIMITS - CALIFORNIA

## SCHEDULE

| UNINSURED MOTORISTS COVERAGE | | | | |
|---|---|---|---|---|
| | | | Premium | |
| | Limit of Liability | Auto1 | Auto2 | Auto3 |
| Bodily Injury Liability | $_____ each person $_____ each accident | $_____ | $_____ | $_____ |

The first paragraph of the Limit of Liability provision in the Uninsured Motorists Coverage endorsement is replaced by the following:

**LIMIT OF LIABILITY**

The limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 04 92 04 86          Copyright, Insurance Services Office, Inc., 1985, 1992          **Page 1 of 1**



## IMPORTANT NOTICE

**IF A PROBLEM ARISES CONCERNING YOUR INSURANCE, LIBERTY MUTUAL WILL MAKE EVERY EFFORT TO RESOLVE THE MATTER.  CALL YOUR LOCAL SALES OFFICE FOR ASSISTANCE.**

**WHENEVER THE COMPANY OR ITS AGENT HAS BEEN UNABLE TO RESOLVE A CONSUMER COMPLAINT AFFECTING THIS POLICY, THE BELOW LISTED STATE AGENCY MAY BE CONTACTED TO ASSIST THE COMPLAINANT IN PURSUING A RESOLUTION OF THE COMPLAINT:**

**CALIFORNIA DEPARTMENT OF INSURANCE**
**CLAIMS SERVICE BUREAU**
**300 SOUTH SPRING STREET**
**SOUTH TOWER, SUITE 201**
**LOS ANGELES, CA  90013**
**1-800-927-4357**

**AUTO 3005 R2**                                                                                      **PF**

**CASE NAME:**      Fisher, et. al. v. Liberty Mutual Fire Insurance Company, et. al.

**ACTION NO.:**      U.S.D.C.—Northern District, Case No. CV-08 3121

## CERTIFICATE OF SERVICE

I am a citizen of the United States and am employed in the County of San Diego, State of California. I am over the age of eighteen years and not a party to this action; my business address is 501 West Broadway, Suite 1780, San Diego, CA 92101.

I am readily familiar with the business practice for collection and processing of correspondence for mailing.

On August 1, 2008, I caused to be served the following document(s):

1.      PLAINTIFF'S FIRST AMENDED COMPLAINT

on the interested parties in said action by placing a true copy thereof served same on the parties/counsel addressed as follows:

William Hanson
Law Offices of William Hanson
2121 North California Boulevard, Suite 290
Walnut Creek, CA 94596
Facsimile: 925-280-9624

Attorneys for Defendant DR. CHRISTOPHER TUCKER

The following is the procedure in which service of this document was effected:

  __X__        U.S. Postal Service by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing mail in accordance with this office's practice, whereby the mail is deposited in a U.S. mailbox in the City of San Diego, California after the close of the day's business.

_____        Personal Service

_____        Facsimile

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that I employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: August 1, 2008                    By: _____
                                                            ROSS A. JUREWITZ